UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JILL BROWN,

        CASE NO. 17-CV-10868
   Plaintiff,       HON. GEORGE CARAM STEEH

v.

HARTFORD LIFE
INSURANCE, CO.,

   Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD (Doc. 46) AND DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD (Doc. 48)**

      Plaintiff Jill Brown alleges that defendant Hartford Life Insurance Company ("Hartford") wrongfully cut off her long term disability benefits after paying such benefits for over five years, pursuant to an employee benefit plan governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). The parties filed cross motions for judgment on the Administrative Record, which the court has duly considered. For the reasons set forth below, Hartford's termination of Brown's claim for long term disability benefits shall be AFFIRMED as Brown has failed to come forward with objective medical evidence to support her claim of total disability which is contradicted by surveillance

evidence, an independent medical examination ("IME"), and the conclusions of five physicians who performed Independent Medical Reviews ("IMRs").

## I. Findings of Fact

### A. Plaintiff's Employment

Brown is a 45-year old Registered Nurse who worked for Oakwood Healthcare, Inc. until January 7, 2012 when she was unable to continue working because of orthopedic spine problems she suffered after several domestic assaults following fusion surgery.

### B. The Hartford Insurance Policy

Brown was a participant in the Group Long Term Disability Plan for Employees of Oakwood Healthcare, Inc. (the "Plan"). The Plan is covered by ERISA. The Hartford issued a group insurance policy, No. GLT-395280, ("Policy"), to Brown's employer, Oakwood Heathcare, Inc. on January 1, 1990. (POL 1-73). The Policy provided for long term disability benefits to qualified employees. Specifically, the Policy provides:

> Disability or Disabled means You are prevented from performing one or more of the Essential Duties of:
> 1) Your Occupation during the Elimination Period;
> 2) Your Occupation, for the 24 month(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and
> 3) after that, Any Occupation.

(AR 1006). The Policy defines "essential duty" as a duty that is:

> 1) is substantial, not incidental;
> 2) is fundamental or inherent to the occupation; and
> 3) cannot be reasonably omitted changed.
> Your ability to work the number of hours in Your regularly scheduled work week is an Essential Duty.

(AR 1007). For the first 24-months of disability, an employee must show that they are unable to perform their occupation. After that time, an employee must establish that she is disabled from "Any Occupation," which is defined as:

> any occupation for which You are qualified by education, training or experience, and that has an earnings potential greater than the lesser of: (1) the product of your Indexed Pre-disability Earnings and the Initial Benefit Period Percentage; or (2) the Maximum Monthly Benefit.

(POL 20).

**C.  Payment of Benefits**

Hartford began paying Brown short term disability benefits in March, 2012, and when the claim transitioned to long term disability, continued to pay those benefits throughout 2014 when the definition of disability changed to "any occupation" on July 9, 2014. The benefits were based on Brown's complaints of back and neck pain, and headaches. On January 30, 2015, Hartford ceased disability payments based on Brown's failure to provide proof of her ongoing disability. (AR 131). After she submitted

certain medical records, benefits were reinstated. (AR 378). However, following surveillance in September, 2015 which suggested that Brown was not disabled, Hartford conducted an IME by Dr. Marvin Bleiberg, board certified in physical medicine and rehabilitation, and an IMR from psychiatrist Dr. Antionette Acenas, and allowed Brown to submit evidence in support of her claim of continued disability. (AR 1128-38, 1108-12). On August 10, 2016, Hartford determined that Brown was not disabled and terminated benefits. (AR 30-35). Brown appealed through counsel on January 31, 2017. (AR 964-73). Hartford obtained four additional IMRs, considered the medical records submitted by Brown from her treating physicians, and affirmed the denial of benefits. (AR 1-9). In her appeal, Brown also stated that she had been awarded Social Security Disability ("SSD") benefits; however, her claim file did not include any SSD documentation beyond the denial of benefits by the Administrative Law Judge dated May 6, 2013, and Brown failed to submit any SSD documentation for consideration on appeal. (AR 4). Having failed to submit any SSD award documentation during the appeal process, there is no information about the award of SSD benefits in the Administrative Record, nor is there any such evidence before this court. On March 7, 2017,

Hartford notified Brown that her appeal had been denied, and the discontinuance of benefits affirmed. (AR 1-9).

**E.     Surveillance**

Hartford conducted surveillance on Brown in July, August, and September of 2013 on six separate days (AR 1747, 1742), but continued to pay benefits. Beginning in 2015, Hartford doubted the physical restrictions Brown reported as excessive, and thus, initiated surveillance again. Surveillance took place on May 1, 2, 30, June 24 and 29,[1] 2015, and September 21 and 22, 2015. (AR 1351-63, 1374-86). On May 1, 2015, surveillance was conducted at Brown's home but it was not determined if she was at home. (AR 1351-63).

On May 2, 2015, she was observed pushing her 17-year old daughter in a wheelchair, lifting and carrying a small wicker table and a large wicker chair, jogging briefly in her front yard, reaching with both hands, turning her head and neck, bending over and walking normally without any assistive device or noticeable signs of difficulty. (Doc. 45). On September 21 and 22, 2015, Brown was observed walking in a normal manner without assistive devices, turning her head and neck, and even hopping on her foot

---

[1] Brown was not observed on May 30, June 24 or 29, 2015.

with a young child.  *Id.*  Brown was also observed pushing a child in a grocery cart and lifting two gallons of milk.  *Id.*

Brown argues the surveillance was consistent with her reported limitations and that she has good and bad days, on most days that surveillance was conducted she was not witnessed at all, and nevertheless, her condition worsened since the surveillance was conducted as she fell off a bar stool in October, 2015, and flipped over her walker in June, 2016.  The court questions the veracity of these claims as two months after her fall, on December 14, 2015, Brown's own treating physician Michaele Oostendorp, D.O., noted that Brown had "no difficulty walking," "no difficulty with balance," "good coordination," and that her "head symptoms migraines less severe."  (AR 742).  Also, an x-ray of the cervical spine from October, 2015 showed only minor degenerative disc disease, and x-rays of her pelvis and left hip showed no fracture as a result of her recent fall.  (AR 1347-49).  It is true, however, that Brown received a steroid injection into her hip on October 31, 2015 (AR 675) and another injection into her trapezius on November 5, 2015.  (AR 673).

Hartford provided the surveillance to Brown's treating physicians, Dr. Michaele Oostendorp, Dr. Judy Macy, and Dr. Raznig Haladjian.  (AR 1200-01, 1160-61, 1197) to inquire if it changed their opinions.  Drs.

Oostendorp and Dr. Macy responded that they still believed that Brown lacked the ability to work, while Dr. Haladjian responded that he could not determine Brown's work restrictions. *Id.*

Hartford did not immediately discontinue benefits based solely on the surveillance videos, and in fact, in July, 2015, found that the surveillance was not sufficient to impact her claim and closed the investigation. (AR 2211).

### E. Plaintiff's Headaches and Psychiatric Limitations

The record does not support Brown's claims that migraine headaches and psychological limitations totally disabled her from working in any occupation. First, Brown's own treating physicians do not offer objective evidence that her headaches or psychiatric limitations rendered her completely disabled from all work. The medical records of Brown's treating physicians suggest that Brown's condition was improving and did not disable her from working. A September 1, 2011 CT scan of the head was unremarkable. (AR 1947). On October 28, 2013, Brown's treating pain psychologist, Dr. Ross Halpern, noted that Brown had only "mild" depression and noted that medication had "dramatically improve[d]" her post-traumatic stress disorder. (AR 1692-93). In May, 2014, her psychiatrist, Dr. Siddique, issued an Attending Physician's Statement

stating that her mood and sleep were improving and her depression was decreased. (AR 617-19). Also, Dr. Judy Sorovetz, Brown's internal medicine physician, on January 23, 2015, stated in an Attending Physician's Statement that Brown did not have any psychiatric or cognitive impairment. (AR 1465-66). On March 24, 2015, Dr. Sorovetz's treatment note states that Brown's migraine headaches had improved with Topamax treatment and was treating with a counselor and taking medication for her depression. (AR 1403). On October 5, 2015, Dr. Oostendorp reported that Brown's migraine headaches were less severe. (AR 1343-46).

A CT head scan from February 17, 2016 was normal. (AR 1206). It is true that on February 22, 2016, Brown's psychiatrist, Dr. Macy, offered her opinion that Brown had poor memory and cognitive skills as well as severe headaches and bladder incontinence (AR 1160-61), but the court does not give significant weight to Dr. Macy's opinion as the medical records of Brown's treating physician, Dr. Haladjian, also from February, 2016, reflect that Brown denied any bladder incontinence, and that Brown "exhibits no signs of aberrant behavior. Her speech is fluent; she is interacting appropriately with staff." (AR 667). Also, on March 5, 2016, Brown's psychiatrist, Dr. Mohamed Siddique, reported that Brown had full-time occupational functionality from a mental health capacity. (AR 1194-

95). Dr. Siddique changed his opinion on May 21, 2016 stating that Brown could not work full-time, but he had not treated Brown during this time and submitted no medical records in support of his changed opinion. (AR 1125, 1106).

Hartford sought an Independent Medical Review ("IMR") from board-certified psychiatrist Dr. Antoinette Acenas who concluded that Brown's psychiatric condition did not preclude her from full-time work. She based this conclusion on a myriad of factors, including the fact that Brown's depression and anxiety was never severe enough for intensive inpatient or outpatient therapy and that she displayed coherent and appropriate behavior. (AR 1108-12). Dr. Acenas shared her report with Brown's treating psychiatrist, Dr. Siddique, who replied on July 16, 2016, that her report was "detailed and comprehensive" and that he concurred with her conclusions. (AR 1071).

In addition to Dr. Acenas's IMR, Hartford also retained board-certified psychiatrist, Dr. Ronald Koshes, to conduct an additional IMR in order to evaluate Brown's appeal of the denial of long term disability benefits. He concluded that Brown's depression and anxiety were not severe enough to prevent her from working, Brown had only seen her psychiatrist sporadically since 2013, had not seen her mental health counselor, Silvia

Fowler, since 2015, and had never been referred for psychological testing or more intensive treatment. (AR 531-37). He also found no evidence of medication side-effects causing cognitive issues. *Id.*

Hartford also retained board certified neurologist, Dr. Carol Foster, to conduct an IMR to review Brown's complaints of headaches as part of the appeal process. (AR 505-516). She concluded that there were no physical findings or cognitive testing to support any neurological impairment due to chronic headaches, that her head CTs were consistently normal, and Brown was never evaluated by a neurologist or headache specialist. She concluded that Brown had full-time functional capacity. *Id.*

### F. Plaintiff's Neck and Back Pain

Plaintiff also seeks long term disability benefits based on neck and back pain stemming from complications from fusion surgery which were aggravated by several domestic assaults perpetrated by her ex-husband. Medical records from Brown's treating physicians, and the conclusions of the IME and IMRs obtained by Hartford, demonstrate that Brown's neck and back pain is not severe enough to preclude her from all work.

A June 7, 2012 MRI of the cervical spine showed some disc protrusion at C4-5 resulting in mild stenosis of the spinal canal. (AR 1898). Electrodiagnostic testing on August 2, 2011 revealed no evidence of right

cervical radiculopathy, no right carpal tunnel syndrome, no right ulnar neuropathy, and was otherwise unremarkable. (AR 1853). On June 28, 2012, Dr. Nilesh Patel, spine and orthopedic surgeon determined that Brown's arm was "not weak enough to fix level C4-5." (AR 1888-89).

On May 7, 2013, Brown's internal medicine physician, Dr. Sorovetz, reported that Brown's neck issues caused lifetime restrictions which limited her to two hours of sitting, standing, and walking in the workplace environment, occasional lifting up to 10 pounds, desk level reaching. (AR 1812). On October 14, 2013, Brown's treating pain specialist, Dr. Razmig Haladjian, reported that Brown's neck paid had been helped "significantly" by a change in medication. (AR 1667-68). A November 20, 2013 MRI of the cervical spine was essentially normal and showed only mild findings of disc degeneration. (AR 1496-97). On December 20, 2013, neurosurgeon Dr. Jason Schwalb placed a cord stimulator in Brown's spine. (AR 1440-64). Brown treated with Dr. Haladjian with injections for pain relief through 2014. In October, 2014, Brown reported that her medication routine was providing her with some relief without medication side effects. (AR 1428, 1642). The same held true as of September 21, 2015. (AR 1282-84). On October 5, 2015, Brown reported to Dr. Michaele Oostendrop, internist, that her right shoulder pain was gone. (AR1343-46). That same visit, it was

noted that Brown receives significant doses of narcotic pain medication including, Gabapentin, Oxycodone, Oxycontin, Tizanidine, trazadone, and Topomax. (AR 733-34).

A CT scan of Brown's cervical spine on December 14, 2015 showed only mild degenerative disc bulge. (AR 1202-03). On March 29, 2016, Brown saw neurosurgeon Samer Elfallai, D.O., (AR 812), who gave her a nerve block injection on April 7, 2016. (AR 664). Dr. Haladjian gave her another nerve block injection on April 30, 2016. (AR 663). On June 15, 2016, Dr. Michaele Oostendrop, internist, stated that Brown was unable to ambulate without a walker. (AR 1115).

On May 2, 2016, an IME was conducted by Dr. Marvin Bleiberg, M.D., board-certified in physical medicine and rehabilitation at Hartford's bequest. Dr. Bleiberg conducted a full examination, as well as reviewed the surveillance and her medical records, and concluded that Brown was physically capable of working 20 hours per week with some lifting restrictions of less than 20 pounds, but opined that she could quickly transition to full-time work. (AR 1128-38)[2]. Dr. Bleiberg found that Brown's self-proclaimed restrictions were contradicted by the surveillance videos.

---

[2] The record indicates that Dr. Blieberg revised his original IME, but only the revised IME was produced. (AR 319).

(AR 1128-38). Dr. Bleiberg noted some limited range of motion in the cervical and lumbar spine, but found there was no instability and a full musculoskeletal examination revealed no spasms or atrophy, and normal range of motion in all joints. *Id.* On May 12, 2016, Brown underwent a CT myelogram which involves a spinal tap performed on the lumbar region of the spine, which concluded that Brown had "[m]oderate narrowing of the right lateral recess and neural foramen" at C4-5. (AR 762). On June 22, 2016, after reviewing additional surveillance videos, Dr. Bleiberg modified his conclusions to opine that Brown could lift as much as 50 pounds. (AR 1122-23). Dr. Blieberg also found that there were inconsistencies between "what she is truly capable of doing versus what she actually told me. She is clearly able to do quite a bit more than she says she can do." (AR 1137).

Hartford sent a copy of the IME to Brown's treating physicians, Dr. Haladjian, Dr. Oostendorp, and Dr. Macy. All three disagreed with Dr. Blieberg's conclusions. Dr. Haladjian continued to opine that Brown was wheelchair bound and incapable of any work. (AR 1077, 79). Dr. Oostendorp stated that Brown could not ambulate without a walker. (AR 1115). Dr. Macy reported that Brown had "spastic reflexes in lower extremities." (AR 1114).

As part of Brown's appeal of the denial of her continued long term disability benefits, Hartford also retained Dr. Theodore Togliatii, board-certified in pain medicine, to prepare an IMR. He concluded that the physical exam findings generally demonstrated a lack of abnormal findings, aside from mild disc bulging requiring only conservative treatment, and opined that Brown was capable of full-time sedentary work. (AR 520-29).

**G.    Appeal Denied**

Hartford discontinued Brown's long term disability benefits effective as of August 10, 2016. (AR 1). Brown appealed via counsel. *Id.* On March 7, 2017, Hartford denied the appeal and affirmed the discontinuation of benefits. (AR 1-9). Among the reasons given for the denial of Brown's appeal, were physician notes from Brown's treating physician, Dr. Samer El Fallal, D.O., on May 20, 2016, which indicated that Brown's use of a walker was "deliberately slow" and that there was a "very strong component of poor effort." (AR 3, 806-07). Hartford also relied on the IME and the opinions of the doctors who performed IMRs, and considered the reports of Brown's treating physicians. (AR 1-9). Hartford noted that although Brown's appeal letter stated she had been awarded Social Security Disability benefits after a finding that she was completely disabled, there was no documentation before Hartford beyond the denial of her application by an Administrative Law Judge dated May 6, 2013. Hartford explained

that the award of SSD benefits did not require the continuation of long term disability benefits under the policy because unlike Hartford, the Social Security Administration is required to give special consideration to the opinions of treating physicians and would not have had the benefit of the surveillance videos. (AR 4). The award of SSD benefits is not part of the Administrative Record and forms no basis for the court's findings of fact and conclusions of law here.

## II. Standard of Review

This matter is before the court on the parties' cross motions for entry of judgment on the Administrative Record. A district court reviewing a decision regarding benefits under ERISA is to "conduct a . . . review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). The court may consider the parties' analysis of the evidence, but may not admit or consider any evidence not presented to the administrator. *Id.* The parties agree that the *de novo* standard of review applies. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Because the *de novo* standard of review applies, the decision of the insurer is not entitled to any deference or presumption of correctness,

but the court is to determine whether the denial of benefits was "objectively correct." *Perry v. Simplicity Eng.*, 900 F.2d 963, 965 (6th Cir. 1990).

## III. Conclusions of Law

The accumulated evidence in the record supports Hartford's decision that Brown was not disabled from Any Occupation after August 9, 2016. The objective medical evidence does not support her claim of total disability, and the surveillance videos contradict her claims. The records of her own treating physicians, Dr. Sorovetz, Dr. Haladjian, and Dr. Oostendrop, from 2015 reflect improvement in her headaches and overall pain. (AR 1403; 1282-84, 1343-46). Spine scans from 2015 and 2016 and an EMG study show only minor degenerative disc disease and minimal findings. (AR 1347-49; 1202-03; 944-45; 938-39; 810-11). A CT scan of Brown's head from February 17, 2016 was normal. (AR 1206). There is no evidence that Brown ever treated with a neurologist or headache specialist.

The surveillance evidence contradicts her claims regarding her lifting and other restrictions and show that she exaggerated her limitations. Her claims that her condition significantly worsened and that she was injured more seriously following the surveillance videos is also contradicted by the records of her own treating physician and other objective medical evidence. (AR 742; 1347-49).

The IME of Dr. Bleiberg and the four IMRs by Dr. Togliatti, Dr. Foster, Dr. Acenas, and Dr. Koshes, support the conclusion that Brown was not disabled from Any Occupation after August 9, 2016.

The court does not accord weight to Dr. Macy's opinion that Brown had cognitive issues because her opinion conflicted with that of her treating internist, Dr. Sorevetz, (AR 1465-66), and there is no evidence of neuropsychological testing.

Brown is not disabled from all work from a mental health standpoint based upon the opinions of Dr. Acenas, Dr. Togliatti, and Dr. Koshes, as well as the fact that Brown never received intensive inpatient or outpatient treatment, had only seen her psychiatrist sporadically, and had never been referred for psychological testing. (AR 531-37).

Hartford was not required to defer to the opinions of Brown's treating physicians, Dr. Haladjian and Dr. Oostendorp, that Brown is unable to work in Any Occupation.

The medical records show that Brown suffered only from minor spine issues requiring conservative treatment that would not be totally disabling.

### IV. Conclusion

For the reasons set forth above, Brown's motion for judgment on the administrative record (Doc. 48) is DENIED, Hartford's' motion for judgment

on the administrative record (Doc. 46) is GRANTED, and the decision of Hartford to deny long term disability benefits is AFFIRMED.

**IT IS SO ORDERED.**

Dated: August 20, 2018

                                       s/George Caram Steeh
                                       GEORGE CARAM STEEH
                                       UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 20, 2018, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---